# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**TRACEY D. BLAZER,**

    **Plaintiff,**

v.

    Civil Action 2:20-cv-799
    **Judge James L. Graham**
    **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Tracey D. Blazer, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Supplemental Security Income benefits ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 16), the Commissioner's Memorandum in Opposition (ECF No. 18), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

    **I.**    **BACKGROUND**

Plaintiff protectively filed her application for SSI on January 5, 2015, alleging that she had been disabled since November 24, 2012. (R. at 176-81.) Plaintiff's application was denied initially and upon reconsideration. (R. at 99-101, 117-18.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 119-20.) Administrative Law Judge Noceeba

1

Southern (the "ALJ") held a video hearing on October 24, 2018, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 33-66.) On January 25, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12-26.) On December 13, 2019, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, which became the Commissioner's final decision. (R. at 1-6.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

Plaintiff testified at the administrative hearing on October 24, 2018, that she lived alone in a mobile home. (R. at 36–37.) Plaintiff testified that she cannot work due to an inability to sit, stand or walk for prolonged periods and an inability to concentrate, due to her hip and knee pain. (R. at 41.) She described her left hip pain as "continuous," but "[s]ome days it's worse than others." (R. at 42.) She described her buttock pain as "constant," and said that if it's raining, her pain is "unbearable." (*Id.*) Medication helps ease the pain. (R. at 43.) She testified to using a cane ever since her left leg was broken, and that she uses the cane because she never knows when she might fall. (*Id.* at 45.) She also uses a knee brace when rains or is cold. (*Id.* at 46.)

When asked how long she could sit, Plaintiff responded that it depended on the weather or how she was sitting. (R. at 47.) Standing for "a little while" helps ease the pain. (*Id.*) Plaintiff estimated that she could walk for about 10-20 minutes. (Id.) She could probably lift about 20 pounds. (*Id.*) She described problems using her hands and gripping for the last 3-4 years due to arthritis. (R. at 48.) She said she had problems sleeping, and had to move from one side to the other. (R. at 48-49.) Plaintiff estimated that she sleeps about four hours a night and

2

naps about three times a week. (R. at 49.) She tries to do housework, but sometimes has help. (*Id.*) She has difficulty getting up her four or five stairs, and she hangs onto the rail step by step. (R. at 50.) She takes care of two small pets and has a "big one up on the hill that's my guard dog." (R. at 51.) She goes to the grocery store monthly with help from a friend or her family. (*Id.*) She attends church services "once in a while," and she sits on her own seat pad. (R. at 52.) She does not have any difficulty taking care of her personal needs, it "just takes me longer." (R. at 53.)

### III. MEDICAL RECORDS AND OPINION

**A.    Adena Bone and Joint: Eric Schiffman, M.D. and Casey Chamberlin, D.O.**

Plaintiff broke her left femur on November 27, 2012, after falling off a barstool. (R. at 305.) An x-ray confirmed a left intertrochanteric fracture. (R. at 368.) Dr. Schiffman, an orthopaedic surgeon, performed an intramedullary nailing for fracture fixation on November 28, 2012. (R. at 369-70.)

When Plaintiff was seen for surgical follow-up on December 12, 2012, Dr. Schiffman noted she was "in severe pain," but she reported her pain was getting better every day. (R. at 315.) Plaintiff also reported that her left foot throbbed with pain at night. (*Id.*) Dr. Schiffman started Plaintiff on Neurontin, OxyContin, and Oxycodone. (*Id.*) Dr. Schiffman reviewed a left hip x-ray which showed good overall alignment of the fracture without hardware complications. (R. at 317.) He concluded that Plaintiff "seems to be having signs of CPRS [complex regional pain syndrome]. I gave her [information] about CPRS and would like her to try neurontin . . . if this doesn't help, I may try Lyrica and eventually she may need a referral to Dr. Chamberlain." (R. at 315.)

On February 20, 2013, Plaintiff stated that she was still in a lot of pain. (R. at 307.) Physical therapy was very difficult without her medication. (*Id.*) Her pain was so bad, she had a hard time getting out of bed. (*Id.*) When discussing her fracture, Dr. Schiffman noted the x-rays showed she had continued healing of the intertrochanteric fracture, and he could not "explain why she continued to have uncontrollable pain other than CRPS." (*Id.*)

Plaintiff saw Dr. Chamberlin, a physical medicine and rehabilitation specialist, for a follow-up for her left hip pain on February 27, 2013. (R. at 304-05.) Plaintiff reported that she had swelling of her left calf region, color changes of her skin and she was unable to tolerate even light touch (socks, or sheet lying on her foot) due to pain. (*Id.* at 305.) Plaintiff also reported that over the past months, the left foot pain and allodynia had resolved and the left calf pain was virtually gone with only intermittent sensitivity to light touch without episodes of swelling or color changes. (*Id.*) Plaintiff further reported pain affecting her posterolateral left hip region as well as left knee pain with walking. (*Id.*) She reported tenderness to light touch over the lateral greater trochanteric region. (*Id.*) She reported a history of bilateral knee injury from a motor vehicle accident multiple years prior and suggested that her current knee pain was associated with this. (*Id.*) She stated that the knee pain occurred when bearing weight on the left leg. (*Id.*) She denied significant low back pain. (*Id.*) Plaintiff rated her pain severity at a level of 10 on a 0-10 visual analog scale. (*Id.*) Plaintiff was using crutches because of an antalgic gait with limited ability to bear weight on the left side. (*Id.*) Dr. Chamberlin noted Plaintiff continued to progress through physical therapy and she should continue for mobilization of the joint. (R. at 304-05.) Dr. Chamberlin assessed that Plaintiff reported symptoms suggestive of complex regional pain syndrome such as allodynia, vasomotor changes, and edema. (R. at 304.)

Plaintiff saw Dr. Schiffman on June 20, 2013, for a six-month post-op check. (R. at 302-303.) He noted that Plaintiff was doing better but was still struggling with pain. (*Id.*) She was using one crutch. (*Id.*) Plaintiff reported increased pain in her hip and leg. (*Id.*) Dr. Schiffman reviewed x-rays which showed continued healing of the hip fracture and no other abnormalities and stated that "I think she has chronic pain issues." (*Id.*) He continued her medication given she had no primary care physician. (*Id.*) When seen for follow-up on January 14, 2014, Plaintiff reported that she was "still having extreme sensitivity to the leg." (R. at 356-357.) Dr. Schiffman assessed Plaintiff's pain in the lower limb as CRPS and continued her medication. (R. at 356.) On January 23, 2014, Plaintiff reported that "her hip pain was doing a little better" but she rated her pain severity at a level of 8 on a 0-10 visual analog scale. (R. at 299-300.) Dr. Schiffman's assessment remained "CRPS of the lower limb." (R. at 299.)

**B.     John E. Crawford, M.D.**

Plaintiff reestablished primary care at Adena Family Medicine on April 28, 2014. (R. at 452-56.) Plaintiff discussed her history reporting she developed severe pain following her surgery thought to be "Chronic Regional Pain Syndrome." (R. at 452.) On examination, Dr. John E. Crawford found pain with range of motion testing in her left hop and tender left greater trochanteric region. (R. at 454.) He prescribed Oxycodone-Acetaminophen for her chronic pain. (*Id.*)

On October 30, 2014, Plaintiff saw Dr. Crawford for follow up on medication refill. (R. at 429-432.) Plaintiff had experienced a burglary a few weeks prior to that appointment and she reported that she had been more anxious since then. (R. at 429.) At that time, Plaintiff was working as a cashier at a gas station and she noted that she had usually worked as a receptionist

5

in the past. (*Id.*) Plaintiff noted more pain in her legs since working on her feet more than in the past. (*Id.*) She wanted to find employment as a receptionist in the future again. (*Id.*) Plaintiff also reported that her left hip and her back were hurting more and that she continued to need pain medication regularly to control her pain. (*Id.*) Plaintiff admitted to a "concerning" level of alcohol use (e.g., four beers or more most days) as well as ongoing tobacco use. (*Id.*) She was not at all happy to hear that the consumption of four or more beers on most days was over-use with likely health consequences. (*Id.*) Dr. Crawford reminded Plaintiff that all of her recent injuries occurred when she had a high alcohol level at the time of the incidents, as shown with levels on arrival at the emergency department. (*Id.*) Following examination, Dr. Crawford assessed Plaintiff with CRPS, left hip pain, left knee pain, a personal history of multiple concussions, alcohol consumption – binge drinking, and anxiety. (R. at 431.)

Plaintiff was seen for pain on the left side on October 29, 2015, at which time Dr. Crawford noted she should continue her medication, Gabapentin. (R. at 563-65.)

**C.     Phillip Swedberg, M.D.**

Dr. Swedberg examined Plaintiff on March 17, 2017. (R. at 616-22.) Plaintiff's chief complaint was left hip and thigh pain. (R. at 616.) On examination, Dr. Swedberg found that Plaintiff ambulated with a steady gait and was able to forward bend and squat without difficulty. (R. at 616-17.) Plaintiff exhibited diminished range of motion of her left hip. (R. at 618.) Dr. Swedberg concluded that Plaintiff was capable of performing a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. (*Id.*) He opined that Plaintiff would have no difficulty reaching grasping and handling objects. (*Id.*)

## IV. ADMINISTRATIVE DECISION

On January 25, 2019, the ALJ issued her decision. (R. at 15-26.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since January 5, 2015, the application date. (R. at 17.) The ALJ found that Plaintiff had the following severe impairments: left hip impairment - status post open reduction and internal fixation with intramedullary rod, degenerative disc disease, anxiety, depression, and alcoholism. (*Id.*) She further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Specifically, the ALJ found that Plaintiff's physical impairments, considered singly and in combination, did not meet or medically equal the criteria for listings 1.02 (Major dysfunction of a joint(s)), 1.03 (Reconstructive surgery or surgical arthrodesis of a major weight- bearing joint), and 1.06 (Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones). (R. at 19.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she could occasionally climb ramps and stairs; she could never climb ladders, ropes or scaffolds; she could frequently balance, stoop, kneel, crouch, and crawl; she could occasionally push and/or pull with the left lower extremity; she must avoid all exposure to moving, heavy machinery and unprotected heights; she retains the ability to understand, remember, and carry out simple, routine tasks; she could perform work with few detailed instructions, few changes, and few decisions so as to provide for low stress; and she could tolerate frequent interactions with coworkers, supervisors, and the general public.

(R. at 19.) In making the above determination, the ALJ gave "significant" weight to the state agency opinions. (R. at 24.) The ALJ also assigned "great" weight to opinion from consultative examiner Dr. Swedberg. (R. at 23.)

Relying on the vocational expert's testimony, the ALJ found that Plaintiff could not perform her past relevant work as an office manager or home restoration service worker, but she could perform jobs that exist in significant numbers in the national economy. (R. at 25-26.) The ALJ therefore concluded that Plaintiff has not been disabled within the meaning of the Social Security Act since January 5, 2015. (R. at 26.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

8

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In her Statement of Errors, Plaintiff contends only that ALJ erred at step two of the evaluation process by failing to find that Plaintiff's complex regional pain syndrome ("CRPS") was a severe impairment. (EFC No. 16). Specifically, Plaintiff argues that "the record establishes that [Plaintiff] suffers from [CRPS]," which "is a potentially disabling medical condition by itself and should have been considered either a severe or non-severe impairment." (*Id.* at PAGEID # 846.) Plaintiff submits that "[b]ecause the ALJ failed to properly classify

9

[Plaintiff's] CRPS as a medically determinable impairment, this Court should reverse the ALJ's decision and remand this case for further proceedings." (*Id.*)  In support, Plaintiff identifies several instances in the record which "establish[] the existence of [P]laintiff's CRPS I." (*Id.* at PAGEID # 847.)  Plaintiff then argues that her "constant reports of pain, and diagnoses of pain, are verified by objective data in this record," which "does indeed show that [Plaintiff] suffers from [CRPS], as it is evidenced by the records of several acceptable medical professionals that evaluated [Plaintiff]." (*Id.* at PAGEID # 848.)  Finally, Plaintiff submits that "[t]he record shows that this impairment has lasted for longer than 12 months." (*Id.*)  Accordingly, Plaintiff concludes that "[t]he ALJ should have determined that [Plaintiff's] CRPS was in fact a medically determinable impairment." (*Id.* at PAGEID ## 848-849.)  Plaintiff argues that "the ALJ provided no explanation as to why it was not considered for the qualification," and that the oversight was not harmless error. (*Id.* at PAGEID ## 849-851.)

In response, the Commissioner contends that Plaintiff's "entire argument rests on her repeated argument that the ALJ ignored her CRPS," but "[t]he ALJ specifically discussed [Plaintiff's] CRPS," "thoroughly discussed [Plaintiff's] pain throughout her decision," and "noted normal findings, such [as] a musculoskeletal exam that was grossly normal for [Plaintiff's] age." (ECF No. 18 at PAGEID ## 856-857.)  The Commissioner maintains that "[i]n sum, [Plaintiff's] entire argument rests on a factual error because the ALJ did in fact consider [Plaintiff's] CRPS." (*Id.* at PAGEID # 857.)  The Commissioner argues that Plaintiff's argument "fails for other reasons as well," including that Plaintiff "did not carry her burden of demonstrating to the ALJ that CRPS was a medically determinable impairment." (*Id.* at PAGEID ## 857-858.)  The Commissioner further argues that because the ALJ discussed

10

Plaintiff's CRPS and pain allegations after step two of the five-step sequential evaluation, the ALJ did not err. (*Id.* at PAGEID # 859.) Accordingly, the Commissioner argues that Plaintiff also has failed to show that any error was harmful. (*Id.* at PAGEID ## 859-861.)

The Undersigned agrees with the Commissioner. Specifically, the Undersigned rejects Plaintiff's threshold argument that "the ALJ fail[ed] to address [Plaintiff's] CRPS at all." (ECF No. 16 at PAGEID # 849.) As the Commissioner correctly points out, in addition to specifically noting that "the record documents that [Plaintiff] was ***diagnosed with left leg hip and knee pain, and complex regional pain syndrome***," the ALJ systematically analyzed Plaintiff's complaints of "debilitating hip and knee pain," "debilitating lower extremity pain," and "back pain" throughout her decision. (R. at 20-22 (emphasis added).) Then, critically, the ALJ found that Plaintiff's "extreme allegations of debilitating hip and knee pain are contradicted by the generally stable, objective findings from imaging, generally mild objective findings from physical examinations, conservative post-surgical treatment with rehabilitation and medications, and evidence of overstated symptoms in light of her high functioning activities of daily living." (R. at 20.) The ALJ also noted that "the record documents normal clinical findings during multiple examinations," including a January 2016 musculoskeletal examination that "was noted as grossly normal for [Plaintiff's] age." (R. at 21.) Thus, it is clear to the Court that substantial evidence supported the ALJ's decision.

Additionally, Plaintiff is incorrect to suggest that the Court should reverse the ALJ's decision because "the ALJ neglected to include CRPS" as a medically determinable impairment at step two of the evaluation process. (ECF No. 16 at PAGEID # 849.) As the Commissioner correctly observes, step two of the evaluation process is merely meant to "screen out totally

groundless claims," and it is well settled that "because an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, any perceived failure to find additional severe impairments at step two [does] not constitute reversible error." *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (quotations omitted) (citing *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *see also Rosshirt v. Comm'r of Soc. Sec.*, No. 2:19-CV-3280, 2020 WL 4592393, at *3 (S.D. Ohio Aug. 11, 2020) (*"*Even assuming that the ALJ should have discussed plaintiff's alleged TBI at step two, any error from this omission was harmless. Step two is the means by which the Commissioner screens out totally groundless claims, and is a '*de minimis* hurdle[.]' Where an ALJ finds at least one severe impairment and considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does not constitute reversible error.") (internal quotations and citations omitted).

For this reason, Plaintiff's reliance on *Hood v. Comm'r of Soc. Sec.*, No. 1:16-cv-1915, 2019 WL 1116185, at *2 (N.D. Ohio Mar. 11, 2019), is unavailing. (*See* ECF No. 16 at PAGEID ## 849-851.) As the *Hood* Court recognized, "[m]isclassification of an impairment at step two is harmless error if the ALJ considers the cumulative effect of all of plaintiff's impairments in the analysis beyond step two" and "[i]f the ALJ continues with the remaining steps, any error at step two is harmless, so long as the ALJ considered the effects of all medically determinable impairments, including those deemed nonsevere." *Id.* (citations omitted). That is precisely what happened here. Because the ALJ considered the cumulative effect of all of Plaintiff's impairments, including Plaintiff's CRPS and pain complaints, beyond step two of the

12

evaluation process, *see* R. at 20-24, any error from the ALJ's omission of Plaintiff's CRPS at step two is harmless.

For these reasons, it is **RECOMMENDED** that Plaintiff's contention of error be **OVERRULED**, and the Commissioner's decision be **AFFIRMED**.

## VII.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Based on the foregoing, it is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## VIII.   PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: May 4, 2021**                               /s/ *Elizabeth A. Preston Deavers*
                                                    **ELIZABETH A. PRESTON DEAVERS**
                                                    **UNITED STATES MAGISTRATE JUDGE**